# Eliza Ann Wildoner's Appeal.

## Davenport's Estate.

A grandfather,—the guardian of the estate of his infant grandchild, who lives in his family from childhood to death, during minority, and is sickly and unable to work,—is entitled to reasonable compensation out of the estate for the grandchild's support.

(Argued April 15, 1887. Decided April 25, 1887.)

January Term, 1887, No. 316, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Orphans' Court of Luzerne County confirming a guardian's account. Affirmed.

NOTE.—The same ruling was made in Lafferty's Estate, 147 Pa. 283, 23 Atl. 445, where the grandparent was the guardian. So the allowance has been made where the grandparent was in poor circumstances, and kept the child with the consent of the guardian. Wall's Estate, 13 Pa. Co. Ct. 413, 2 Pa. Dist. R. 580; Tubb's Estate, 3 Lanc. L. Rev. 34; Norris's Estate, 19 Phila. 195. But the contrary was held where the guardian did not consent to the care by the grandparent. Soley's Estate, 5 Legal Gaz. 93.

In the final account of Charles Davenport, guardian of the estate of Charles F. Davenport, a deceased minor, the accountant charged himself with pension money and bounty amounting to $1,674.33, and claimed credit for $4,045.85.

Among the credits claimed were these:

|  |  |  |
|---|---|---|
| Paid D. L. O'Neill, attorney, for filing partial account ...................... | $10 | 00 |
| Paid car fare and expenses, witnesses, etc., on pension case ...................... | 50 | 00 |
| Paid board, clothing, mending, washing, medical attendance, medicine and schooling from July 16, 1867, date from which pension was allowed to Oct. 28, 1880, when ward arrived at sixteen years, twelve years, three mos., at $10 per month ...................... | 1,474 | 00 |
| Fees of guardian ...................... | 123 | 70 |
| Paid justice for executing pension vouchers | 9 | 50 |
| Two years' board of ward from 16 years to 18 years with clothing and medicine... | 384 | 00 |
| One year's board, attending, nursing and medicines at $25 per month .......... | 300 | 00 |
| One suit of clothes during nineteen years.. | 16 | 00 |
| Nursing and other attendance and board during nine months from Jan. 1, 1885, to Oct. 1, 1885, the date of death of ward, at $5 per day ................. | 1,350 | 00 |
| Cash given him to pay Henry Long ...... | 10 | 00 |
| Cash given him to get suit of clothes..... | 50 | 00 |
| Paid D. L. O'Neill for filing this account. | 20 | 00 |

The exceptions filed by Eliza Ann Wildoner, the mother of the minor, specified, *inter alia,* these items.

Upon dismissing the exceptions the court below delivered the following opinion:

A minor is incapable in law of making either a valid will or an assignment of his estate; so we must dismiss these facts out of the case.

In 1882, when the ward was past seventeen years of age, this

guardian, who was also the grandfather of the child, was before this court asking for past and future allowance for the support of the ward. The ward was then a witness, and testified in behalf of the guardian, expressing a willingness that his guardian should be paid for his care and support. On his deathbed, only twenty-nine days before he would have attained his majority, he expressed to his neighbors and former companions a desire to live only until he could, according to law, settle with his grandfather, and allow him his entire estate for his kindness toward him.

The mother of the boy married in 1869 and left the child wholly with his grandfather, but now seeks to acquire all of the pension money which was received for the child during his last illness. The entire estate consists of pension money received from 1867 to 1882 at the rate of $10 per month and $100 bounty. When this case was before us in 1882 it presented features entirely different from those presented now. Then the evidence exhibited the ward as a stout, healthy, lazy boy, indulged by his grandparents in idleness and general vagabondage, and we refused to make any allowance for such care and support. Now, however, the evidence clearly shows that the child, although large, was weak and sickly, unable to work and carrying with him inherited and rapidly developing seeds of consumption, of which he died. Under all the circumstances we cannot now say that the guardian did anything but his duty in smoothing the brief pathway of this youth to the grave.

Perhaps no one who has never had the experience can appreciate the task and burden of nursing the sick, especially with such a disease as this was, and perhaps no one ever desires to use money for any purpose more than to be indulged and favored and watched under such circumstances. The entire fund added up in a column looks large, but when our view of the case is taken $10 per month looks small enough for the care and support of this boy under all the circumstances, during all the years and especially the last two or three of his life.

We do not balance the legal authorities, for they are all based upon a different state of facts. We can only say that in our judgment justice between the parties can only be done according to law by allowing the guardian the entire fund received by him for his ward for support of the child, his expenses in securing the fund, and his settling the account. We, therefore,

enter judgment that there is nothing due either the ward's estate or the guardian.   The guardian must pay the cost of this proceeding, for not keeping an account and for not having the court adjust the matter of allowance in the start or having some express agreement with the mother.

The assignments of error specified the action of the court in holding generally as matter of fact that the child, although large, was weak and sickly, unable to work and that the guardian did his duty; in holding as matter of law that the guardian was entitled to the entire fund received by him for his ward for support of the child and his expenses in securing the fund and settling the account; in not sustaining the exceptions filed to the said guardian's account before confirmation of the same; and in entering judgment that there is nothing due the ward's estate.

*John Lynch* and *E. A. Lynch,* for appellant.—The guardian stood *in loco parentis* to his ward, and therefore cannot legally charge for his support.

The ward earned his support while living with his guardian, who therefore cannot charge for the same.

In Seibert's Appeal, 19 Pa. 49, it is held that "if a testator, by benevolent manifestations, may put himself *in loco parentis,* so as to entitle a stranger to maintenance, much slighter circumstances will bring the case of a grandchild within that rule."

In Duffey v. Duffey, 44 Pa. 399, a daughter of the plaintiff died leaving children.   Three of them, being very young, were taken from the funeral to their grandparent's home.   Their father married again and died four years after.   The grandparent presented a bill of $690 for boarding and clothing of the children.   The court held that he could not recover; that a grandfather is liable to relieve and maintain his destitute grandchildren when their necessities require it, and that their relationship excludes the implication of a promise to pay him.

In Douglas's Appeal, 82 Pa. 169, it was held that where a stepfather takes his stepdaughter to live with him as one of his family, he is not entitled to be repaid for expenditures made for her during her minority.

In Brown's Appeal, 112 Pa. 18, 5 Atl. 13, the guardian received pension money for his ward and paid it, under advice of counsel and a special contract, to the stepfather of his ward

for support; and it was held that he could not be surcharged with the amount so paid the stepfather. But in the case at bar there was not only no such contract, but such a distinct understanding between the mother and the grandfather as precludes any presumption of compensation.

In Ruckman's Appeal, 61 Pa. 251, it was held that to recover for maintenance after the death of the ward, the stepfather must prove a contract with the ward's guardian.

In Horton's Appeal, 94 Pa. 62, the ward was a niece of the wife of guardian and lived with him. She worked for him, and he boarded, clothed, and schooled her as one of his own children. There was no contract, and the court held that the guardian was not entitled to a credit in his account for support.

In Beam's Appeal, 96 Pa. 74, the guardian was an uncle (by marriage) of two wards, and charged in his account $2 per week for board, in all $557. The court disallowed the claim, because of the relationship and the fact that they were members of his family.

Suppose the situation were reversed and the mother was a claimant for the services of her boy, against the grandfather, for wages earned as a servant; the court would promptly defeat such a claim.

In the case of Lantz v. Frey, 14 Pa. 201, it was held that a female living with her stepfather, while in her minority, is not entitled, after arriving at full age, to recover from him wages for services rendered, without proof of a contract express or implied. Such a contract will not be implied as to one standing *in loco parentis,* merely from the fact of such service having been performed. Patton v. Conn, 114 Pa. 183, 6 Atl. 468; Walls' Appeal, 111 Pa. 460, 56 Am. Rep. 288, 5 Atl. 220; 2 Kent, Com.; Cummings v. Cummings, 8 Watts, 366; Defrance v. Austin, 9 Pa. 309; Candor's Appeal, 5 Watts & S. 513; Smith v. Milligan, 43 Pa. 107.

If it was necessary to expend the money for the support and care of the ward, it was the duty of the guardian to follow the act of assembly, particularly when he was aided by counsel from the inception of this trust. It matters little to an orphan child whether his interests are sacrificed and his prospects blighted by well-meaning ignorance or by wilful malice. Either is within the definition of misconduct, a word which applies not to the motive but the act. Act March 29, 1832 (P. L. 192); Nichol-

son's Appeal, 20 Pa. 54; Walls' Appeal, 104 Pa. 15; Pennock's Estate, 32 Phila. Leg. Int. 169; 2 Rhone, Orphans' Court, Pr. 237, pl. 12, 13, 15.

The attempt to conclude the mother and heir of the ward's estate, because of an alleged assignment and will in favor of the guardian, cannot, of course, prevail. They were both executed at the same time, and but a few days before the ward's death, when he was not of age, and was weak in mind, and destitute of all information about his estate.

The fact that the ward was induced to execute the papers in question is a strong circumstance, showing that he did not comprehend the condition of the estate according to the guardian's account, and that he at least believed there was something due him. Act April 8, 1833, P. L. 249, § 3; Wills's Appeal, 22 Pa. 325; Eberts v. Eberts, 55 Pa. 110; Kinter's Appeal, 62 Pa. 318; Milligan's Appeal, 82 Pa. 389.

Acquiescence in, or acknowledgment of, the invalid act cannot be invested with greater vigor than the deed itself by which the act was done. The policy of the law which denies the capacity to do the act as clearly denies the capacity to confirm it, except in the legal mode. If, through the administration of equity, we can produce a result which the law denies *ab initio* on grounds of public policy, then estoppel or compensation, its equitable equivalent, will accomplish what the law and policy have forbidden. Glidden v. Strupler, 52 Pa. 400.

*G. R. Bedford,* for appellee.—Seibert's Appeal, 19 Pa. 53, only decided that a legacy to a grandchild, payable at twenty-one years, carried interest needed for his support meantime.

Duffey v. Duffey, 44 Pa. 399, was a suit by a grandfather against the father for support of the latter's children. No contract or even request on the part of the father was shown, and no claim was made until after the father's death.

In Douglas's Appeal, 82 Pa. 169, it was shown that the ward performed "a good deal of work," and it did not appear that the guardian stepfather was of insufficient ability.

Brown's Appeal, 112 Pa. 18, 5 Atl. 13, upon its reasoning, as well as the conclusion reached, is an authority in our favor.

In Ruckman's Appeal, 61 Pa. 251, it did not appear that the stepfather was unable to afford the support.

In Horton's Appeal, 94 Pa. 62, it was shown that the guard-

ian frequently declared that he had taken his ward as one of his own children and would treat her as such, and that he did not want anyone to send her to school. It was also shown that the ward was healthy and performed regular services, and it was further found as a fact by the examiner that the ward was eligible to admission to the school for soldiers' orphans. Added to this the guardian was of sufficient ability.

In Beam's Appeal, 96 Pa. 74, it was found as matter of fact that "the services of the ward were the equivalent of the board charged."

In Nicholson's Appeal, 20 Pa. 54, the maternal relatives offered to maintain the minors free of all expense.

Walls' Appeal, 104 Pa. 15, is not in point. It only held guardian liable to account notwithstanding lapse of time, etc.

As to the suggestion that "if the situation was reversed and the mother was a claimant for the services of her boy, against the grandfather, the court would promptly defeat such claim," it is sufficient to say that the cases cited on the question were all actions at law dependent on contract, and moreover the support and care of the infant in almost every instance, as in the present, were more than equivalent to the services claimed for. On the other hand the authorities are abundant in favor of the decree appealed from.

In Re Harland, 5 Rawle, 323, it is said: Chancery will allow even for past maintenance, where the father was not of competent ability.

In Strawbridge's Appeal, 5 Whart. 568, a mother was allowed in settlement of her account for support of her minor son during sixteen years.

In Dawes v. Howard, 4 Mass. 97, a father was allowed for support of his children, he being of little property, although he made no charge against them and manifested no intention of doing so.

In Brown's Appeal, 112 Pa. 18, 5 Atl. 13, a stepfather was allowed for support of a minor child in addition to use of real estate, and although the minor did chores, etc. The question was on the reasonableness of the guardian's agreement.

In Pennock's Estate, 11 Phila. 75, a mother was allowed for past support, the court saying that it may ratify what it might direct, and will authorize a reimbursement for expenses.

In Longaker's Appeal, 36 Phila. Leg. Int. 73, it was said

that when the amount paid for maintenance or education of minors is within such limits as ought to have been decreed upon application, it will be allowed on settlement of the account.

In Simon's Estate, 42 Phila. Leg. Int. 445, a guardian was allowed on the settlement of his account for support of his ward, although no previous order for maintenance had been made by the court.

In Selleck's Appeal, 42 Phila. Leg. Int. 456, 16 W. N. C. 320, it was held: (1) The absence of an order of court making an allowance for the support of a ward will not prevent the court from making a proper allowance upon the settlement of the guardian's account when the circumstances require it. (2) The pension when granted related to and was paid from the death of the father. There is no legal objection, therefore, to making the allowance extend backward to the beginning of the pension, if the real needs of the ward require or justify it.

From these authorities it is manifest that where one even stands *in loco parentis* and is of insufficient means, he will be allowed for the support of his ward, whether or not he manifested any previous intention to charge for it, and whether he applied originally to have an allowance fixed by the court in advance, or claims the same upon the settlement of his account. Indeed, in a case like the present one it would be impossible to fix in advance a proper allowance, for neither the court nor the guardian could anticipate the prolonged illness of the ward, wearying alike to him and to those who had the care of him.

PER CURIAM:

We discover nothing in this record which demands a reversal of the decree. The conclusion of the learned judge is well sustained by authority and by the justice and equity of the case.

Decree affirmed, and appeal dismissed, at the costs of the appellant.